UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| **JOSHUA WOODARD, NEIL WESTFALL, ALEX SHELNUT, JEREMY McKINNON, all professionally known as A DAY TO REMEMBER,** )<br>)<br>)<br>)<br>**Plaintiffs,** )<br>)<br>v. )<br>)<br>**VICTORY RECORDS, INC. and ANOTHER VICTORY, INC.** )<br>)<br>**Defendants.** ) | Civil Action No. _____<br><br>JURY DEMAND |

## COMPLAINT

### The Parties, Jurisdiction and Venue

1. The Plaintiffs, Joshua Woodard, Neil Westfall, Alex Shelnut and Jeremy McKinnon, are members of a band professionally known as A Day To Remember ("ADTR"). Until the expiration of the contract to which reference is made hereinafter, they agreed to render their exclusive personal services as recording artists in connection with the production of Records to Defendant Victory Records, Inc. ("Victory"). The Plaintiffs earn their livelihood from monies derived from sales of records to be paid by Victory, from revenues derived from their songwriting activities, also to be paid by the Defendants, and from touring and sales of merchandise in connection therewith, also paid, in part, by the Defendants. The Plaintiffs are each citizens and residents of Florida.

2. Defendant Victory is a corporation organized and existing under the laws of the state of Illinois with its principal place of business located in Chicago, Illinois. It is a record company. Defendant Another Victory, Inc. ("Another Victory") is also a corporation organized

1

and existing under the laws of the state of Illinois with its principal office located in Chicago, Illinois. It holds itself out as a music publisher.

3. This Court has subject matter jurisdiction over this cause pursuant to 28 U.S.C. § 1332 because it is a controversy between citizens of different states and the matter in controversy, exclusive of interest and costs, exceeds $75,000. The financial center of Plaintiffs' business operations is located in this judicial district. Their agent who supervises the financial aspect of their business, including with the Defendants, is located in this judicial district. This Court has personal jurisdiction over the Defendants pursuant to Tennessee Code Annotated § 20-2-214 because, among other things, they have transacted business within Tennessee, entered into a contract for services to be rendered and payments to be made in Tennessee and they have sent misleading and inaccurate royalty statements and payments to the Plaintiffs' agent who is located in Tennessee. In addition, the Defendants purposefully availed themselves of the benefits and privileges of doing business in this state. Among other things, Defendants have offered and continue to offer the Albums discussed hereinafter for sale, as well as merchandise, the proceeds of which are also at issue here, for sale in this judicial district by means of an interactive website which enables consumers located in this judicial district to purchase these and other items. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) and (c) as Defendants, for venue purposes, are residents of Tennessee.

## The Controversy

4. On or about July 17, 2006, Plaintiffs entered into a contract with Defendant Victory. To the best of their knowledge, information and belief, this contract, labeled as a "Victory Records Deal Memo", is the sole document ever created which evidences their

agreement with the Defendants ("the Deal Memo"). The Deal Memo is attached hereto as Exhibit A.

5. Plaintiffs agreed in the Deal Memo to render their services "in connection with the production of Records." The extent of their obligation is more specifically identified as follows:

> Exclusive, 5 Album deal with option on second, third, fourth and fifth album…."

6. "Album" is defined in the Deal Memo as "a [sic] of reproduction, transmission or communication of Recordings, now or hereafter known, manufactured, distributed, transmitted or communicated in any format…."

7. Plaintiffs have rendered their exclusive services as recording artists to the Defendants in connection with the production of the following eight (8) Albums, as defined in the Deal Memo:

  (i) "What Separates Me From You" (LP embodying 10 songs); release date November 16, 2010, Victory Catalog No. VR603; and

  (ii) "Homesick" (LP embodying 12 songs); release date February 3, 2009, Victory Catalog No. VR448; and

  (iii) "Homesick – Special Edition" (LP embodying 14 songs, being 12 original album cuts plus 2 bonus tracks); release date 2009, Victory Catalog No. VR541; and

  (iv) "Homesick – Deluxe Special Edition" (LP embodying 15 songs, being 12 original album cuts and 3 bonus tracks); release date October 26, 2009, Victory Catalog No. VR550; and

3

      (v)    "For Those Who Have Heart" (reissue) (LP embodying 16 songs, being 12 original album cuts plus 4 bonus tracks); release date February 15, 2009, Victory Catalog No. VR443; and

      (vi)    "For Those Who Have Heart" (LP embodying 12 songs); release date January 27, 2007, Victory Catalog No. VR337; and

      (vii)    "Attack Of The Killer B – Sides" (EP embodying 4 songs – 1 new, 3 previously released); release date January 27, 2007, Victory Catalog No. VR337; and

      (viii)    "Old Record" (LP embodying 10 songs); release date October 28, 2008, Victory Catalog No. VR494 – this is a rework of the band's début album "And Their Name Was Treason", originally released on Indianola Records.  Among other things, the Album was re-titled, parts were rerecorded, new album art was created and song titles changed.  Victory's description of this release on its website is as follows:  "This is A Day To Remember's first record ever!  It's now better than ever since it's been rerecorded, re-written and re-mastered.  Just a little bit of cleaning up, to an already stellar album."

    8.    Plaintiffs, accordingly, have performed fully, fulfilled and completed their duties and obligations as set forth in the Deal Memo with respect to the production of Albums.

    9.    Plaintiffs have never transferred their ownership rights, including the copyrights, in any musical compositions or Recordings which they have written and/or recorded or otherwise created, whether embodied in the Albums, or otherwise to Defendants.

10. Nevertheless, Defendant Victory, without the knowledge, permission or authority of Plaintiffs, has filed two sound recording copyright applications in two Albums, one with respect to "For Those Who Have Heart" created in 2006 and a second with respect to "For Those Who Have Heart (Re-Issue)" created in 2008. Moreover, Victory has also claimed a sound recording copyright with respect to each of the other Albums, despite acknowledging that the Plaintiffs are the authors and creators thereof.

11. While Another Victory, pursuant to the Deal Memo, agreed to provide recoupable advances with respect to publishing, presumably of compositions embodied on the Albums, the Plaintiffs have never transferred any ownership in and to the compositions nor the copyrights therein, to either of the Defendants. Nevertheless, Victory has filed copyright applications in its own name for the compositions embodied on three (3) Albums, "For Those Who Have Heart", "For Those Who Have Heart (Re-Issue)" – Being "1 Compact Disc" and "1 Video Disc"; and "What Separates Me From You." In each of these three applications for copyright registrations, Victory represents and acknowledges that the Plaintiffs are the authors of the lyrics and music, and with respect to the compositions embodied on "What Separates Me From You", also the authors of the musical arrangements.

12. Also pursuant to the Deal Memo, while Victory was permitted to sell merchandise related to the Plaintiffs, the Plaintiffs retained the right to manufacture and sell merchandise at its live performances and otherwise, so long as they did not sell to "any retailer."

13. The Defendants agreed to issue royalty statements each quarter within 60 days after the end of each such quarter. Reserves for returns were to be set and liquidated according to the schedule as set forth in the Deal Memo. Defendants specifically agreed that "there will be no reserve for digital sales."

## Count I
### (Declaratory Judgment – Plaintiffs Have Fulfilled Their Obligations Under The Deal Memo)

14. Plaintiffs seek this Court's declaration that they have fulfilled their obligations with respect to the commitments set forth in the Deal Memo in connection with the production of five (5) albums. As set forth herein, Victory has released Albums, defined to be "reproduction, transmission or communication of Recordings, now or hereafter known, manufactured, distributed, transmitted or communicated in any format."

15. In fact, Victory has "produced" and released to the public eight (8) such Albums.

16. Plaintiffs, therefore, seek this Court's declaration that they have fulfilled their obligations under the Deal Memo and are no longer bound in any respect for further performance thereunder; that Defendants have no right to constrain or attempt to constrain Plaintiffs' right to record for others; and that Defendants have no basis to impede, or to attempt to impede, in any manner, Plaintiffs' exercise of their rights to record, manufacture, distribute and sell Recordings and other sound recordings.

## Count II
### (Declaratory Judgment – Copyright Ownership)

17. The Plaintiffs also seek this Court's declaration that they are the owners of all right, title and interest, including the copyrights, in and to the sound recordings composing the Albums, and the compositions to the extent that the Plaintiffs wrote or co-wrote them, embodied on the Albums and/or otherwise provided to Defendants pursuant to the Deal Memo.

18. As set forth herein, Plaintiffs have never conveyed to Defendants any interest either in the compositions or sound recordings which, as acknowledged by Defendants, they have authored. Accordingly, for the reasons set forth herein, the Defendants have no ownership interest in them, or the copyrights therein and the Plaintiffs may terminate any license by which

6

the Defendants have exploited them heretofore. The Plaintiffs seek the Court's declaration accordingly.

### Count III
### (Breach of Contract)

19. The Defendants have breached the Deal Memo because they have, despite their agreement otherwise, created reserves for digital sales. Through the creation of these unauthorized reserve accounts, the Defendants have retained funds which have been earned by and should have been paid to Plaintiffs. In addition, the Defendants have breached the Deal Memo by failing to follow the schedule for the creation and liquidation of reserves for returns of physical goods. Moreover, because Victory's advertised "Return Policy" is that "all sales are final," and "we do not allow returns for any items," with respect to merchandise sold online, establishing a "reserve for returns" account at all for such sales is not appropriate. Despite Plaintiffs' repeated demands, the Defendants have failed to liquidate such accounts and pay royalties pursuant to the Deal Memo.

20. In addition, Plaintiffs have the right to manufacture and sell merchandise at its live concerts and/or to sell it directly to consumers, which rights Plaintiffs have exercised. The only restriction upon Plaintiffs' merchandise rights is that they may not sell to "any retailer." Plaintiffs have not done so. Nevertheless, the Defendants have wrongfully withheld royalties which are earned, due and payable to Plaintiffs, expressly because Plaintiffs have exercised these rights. Defendants, alleging that by selling merchandise directly to consumers through a "webstore", Plaintiffs have breached the Deal Memo, have withheld at least $100,000 as a "penalty." These sums are rightfully monies due and payable to the Plaintiffs. On information and belief, and despite repeated demands for accurate and complete accountings, the Plaintiffs

7

believe that Defendants have withheld and continue to withhold wrongfully sums in excess of $100,000.

## Count IV
### (Accounting)

21. Because, despite their repeated demands, the Defendants have failed to make accurate accountings of monies due to the Plaintiffs, the Plaintiffs are unable to allege precisely how much they are owed as a result of Defendants' breaches. Accordingly, the Plaintiffs seek an accounting of the Defendants to disclose fully and accurately monies earned and amounts due and owing to the Plaintiffs.

## Count V
### (Violation of the Tennessee Consumer Protection Act, T.C.A. § 47-18-101, et seq.)

22. The actions and omissions of the Defendant, more particularly in preparing knowingly false, deceptive and misleading royalty statements and payments to the Plaintiffs, through their agents in Tennessee, constitute violations of T.C.A. § 47-18-104 in that their unfair and deceptive acts or practices affect the conduct of trade or commerce and otherwise constitute acts or practices which are deceptive to the Plaintiffs.

23. Pursuant to T.C.A. § 47-18-109, Defendants' deceptive acts or practices were willful, knowing and repeated actions, thereby rendering them liable for three (3) times the actual damages sustained by the Plaintiffs. In addition, because of their violations of the Tennessee Consumer Protection Act, they are liable to the Plaintiffs for Plaintiffs' reasonable attorneys' fees and costs.

WHEREFORE, Plaintiffs demand judgment of the Defendants as follows:

1. That this Court declare that the Plaintiffs have fulfilled their obligations to the Defendants under the Deal Memo and are no longer bound thereby in any regard; and

2. That this Court declare that the Plaintiffs are the owners of all right, title and interest, including the copyrights, in and to sound recordings constituting the Albums and the compositions embodied thereon or otherwise provided to Defendants; and

3. That this Court declare that the Defendants have no basis to impede the Plaintiffs' rights to record for others, nor to interfere in the Plaintiffs' marketing and sale of Recordings and/or other sound recordings embodying their performance, Compositions and/or merchandise; and

4. For compensatory damages for breach of contract; and

5. For a complete accounting by the Defendants; and

6. Pursuant to the Tennessee Consumer Protection Act, a judgment for three (3) times the actual damages sustained by the Plaintiffs; and

7. Pursuant to T.C.A. § 47-18-109, for an award against the Defendants of Plaintiffs' reasonable attorneys' fees and costs; and

8. For such other and further relief as may be appropriate; and

9. For general relief; and

10. For the costs of this cause.

## JURY DEMAND

Plaintiffs demand a jury.

/s Jay S. Bowen
Jay S. Bowen, BPR No. 2649
BOWEN & UNGER, PLC
47 Music Square East
Nashville, TN 37203
Tel: (615) 329-4440
Fax: (615) 329-4485
Jbowen@bowenungerlaw.com

Of Counsel:

Daniel B. Hayes
Jeff Leven
DAVIS SHAPIRO LEWIT & HAYES, LLP
150 South Rodeo Drive, Suite 200
Beverly Hills, CA 90212
Tel: (310) 248-3400
Fax: (310) 278-4457
Dhayes@davisshapiro.com
jleven@davisshapiro.com

*Attorneys for Plaintiffs*