**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| JOSHUA WOODARD, NEIL WESTFALL, ALEX SHELNUTT, JEREMY McKINNON, all professionally known as A DAY TO REMEMBER. | )<br>)<br>)<br>) |
| | ) Case No. 11-cv-7594 |
| Plaintiffs, | ) Honorable John Z. Lee |
| v. | )<br>) |
| VICTORY RECORDS, INC. and ANOTHER VICTORY, INC. | )<br>) |
| Defendants. | )<br>) |

## **MEMORANDUM OPINION AND ORDER**

Defendants Victory Records, Inc. and Another Victory, Inc. ("Defendants") seek dismissal of Counts II, IV, V, VI, and VII of Plaintiffs Joshua Woodard, Neil Westfall, Alex Shelnutt and Jeremy McKinnon's ("Plaintiffs") First Amended Complaint ("Complaint"). For the reasons that follow, Defendants' motion is granted in part and denied in part.

## **Background**[1]

Plaintiffs are the members of a Florida-based rock band professionally known as "A Day to Remember" ("ADTR"). (Compl. ¶ 1.) On July 17, 2006, Plaintiffs entered into a 5-album recording contract (the "Deal Memo") with Defendant Victory Records, a record label based in Chicago. (*Id.* ¶¶ 2, 5, 6.) The relationship between the band and the record label turned sour, and Plaintiffs filed the instant lawsuit against Defendants, seeking to extricate themselves from the record deal. Plaintiffs also request declaratory relief and monetary damages.

---

[1] These facts are alleged in Plaintiffs' Complaint and are taken as true for the purposes of deciding Defendants' motion to dismiss. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

Plaintiffs allege that they have more than satisfied their obligations under the Deal Memo by delivering eight albums to Defendants ("Albums"). (*Id*. ¶ 8.) Plaintiffs further assert that they own all copyrights to their music and have never transferred any copyrights to Defendants. (*Id*. ¶ 10.) On the other hand, according to Plaintiffs, Defendants improperly have filed numerous copyright applications for certain compositions appearing on certain of the Albums, provided misleading and/or incomplete royalty statements and payments to Plaintiffs, and otherwise violated the terms of the Deal Memo. (*Id*. ¶¶ 11-14.) For their part, Defendants deny that Plaintiffs have satisfied their end of the bargain, and, in seeking to enforce the terms of the record deal, assert several counterclaims for various breaches of contract against Plaintiffs.

Before the Court is Defendants' renewed motion to dismiss five of Plaintiffs' seven causes of action: Count II (Declaratory Judgment – Copyright Ownership); Count IV (Accounting); Count V (Violation of Tennessee Consumer Protection Act, T.C.A. § 47-18-101 *et seq*.; Count VI (Violations of the Illinois Consumer Fraud Act, § 815 ILCS 505/1 *et seq*.; and Count VII (Violations of the Illinois Right of Publicity Act and the Lanham Act). Defendants do not seek dismissal of Plaintiffs' request for a declaration that Plaintiffs have fulfilled their obligations under the Deal Memo (Count I) or their breach of contract claim (Count III).

**Discussion**

**I.    Count II – Declaratory Judgment (Copyright Ownership)**

In Count II, Plaintiffs seek a judgment declaring that they are the rightful owners of the copyrights in the sound recordings on the Albums and the compositions embodied in the Albums. Plaintiffs also (a) seek a declaration that Defendants have no ownership interest in the recordings or compositions; and (b) ask the Court to terminate the Deal Memo. (Compl. ¶¶ 18, 19.) For their part, Defendants assert that Count II should be dismissed on two grounds. First,

they argue that Fed. R. Civ. P. 19 ("Rule 19") bars Plaintiffs' claim, because Plaintiffs seek to adjudicate the parties' respective ownership interests in the copyrights to the recordings without including as parties three individuals who have a putative ownership interest in the copyrights. Thus, Defendants argue, these individuals either should be joined as indispensable parties to the litigation or the claim should be dismissed. Second, Defendants argue the statute of limitations has run on Plaintiffs' copyright claim, requiring dismissal. The Court addresses each argument in turn.

### A. Indispensable Parties

Rule 19(a)(1) defines the criteria for a non-party to be determined to be "indispensable" and thus required to be joined to an action as follows:

> A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>
> > (A) in that person's absence, the court cannot accord complete relief among existing parties; or
> >
> > (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
> >
> > > (i) as a practical matter impair or impede the person's ability to protect the interest; or
> > >
> > > (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1)(A), (B)(i), (B)(ii). Where an individual who is indispensable under Rule 19(a) cannot be joined as a party, Rule 19(b) provides that the action may have to be dismissed:

> If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed. The factors for the court to consider include:

3

    (1)    the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;

    (2)    the extent to which any prejudice could be lessened or avoided by:

        (A) protective provisions in the judgment;

        (B) shaping the relief; or

        (C) other measures;

    (3)    whether a judgment rendered in the person's absence would be adequate; and

    (4)    whether the plaintiff would have an adequate remedy if the action were dismissed for non-joinder.

Fed. R. Civ. P. 19(b)(1)-(4).

Here, Defendants contend that there are three putative owners of the copyrights in the works at issue who are indispensable parties but are not parties to this action: Tom Denney, Kevin Skaff, and Chad Gilbert, all of whom were formerly associated with ADTR. Defendants argue that if the Court adjudicates the ownership of the copyrights as Plaintiffs request, the copyright interests of these individuals may be extinguished.

Count II of Plaintiffs' Complaint embodies three separate requests for relief. In paragraph 18, Plaintiffs ask the Court to declare that they are the owners of all recordings and the copyrights in and to the recordings at issue. In paragraph 19, Plaintiffs ask the Court to find and declare that (1) Plaintiffs never conveyed an interest in those recordings or their copyrights to Defendants; and (2) Defendants thus have no ownership interest in the recordings or copyrights. In the face of Defendants' motion to dismiss, Plaintiffs clarify that they only wish the Court to find and declare "that they have never transferred ownership of their proportional interests in certain copyrights to Victory." (Dkt. 118 at 22.) Essentially, Plaintiffs now wish to voluntarily

limit the relief sought in Count II to that sought in the first half of paragraph 19.  The Court treats this as a binding concession by Plaintiffs and considers whether Rule 19 would bar it from considering this narrower issue.

The crux of Defendants' argument is that a copyright owner is an indispensable party to a suit regarding the validity of a copyright.  But the limited relief sought by Plaintiffs would require the Court only to decide whether the Deal Memo provided for a valid transfer of the copyrights owned by Plaintiffs, whether in whole or in part, to Defendants.  The Court sees no reason why such a determination would impact the copyrights of the other purported owners, who are not signatories to the Deal Memo.

Furthermore, these purported other copyright owners are not present in this action claiming an interest.  The "theoretical interest" of a purported third party "is insufficient to require joinder under Rule 19." *Zimnicki v. Gen. Foam Plastics Corp.*, No. 09 C 2132, 2010 WL 1257778, at *2 (N.D. Ill. Mar. 24, 2010) (citing *Ladenberger v. Nat'l Tech. Transfer, Inc.*, No. 99 C 5348, 2000 WL 1349247, at *2 (N.D. Ill. Sept. 19, 2000)); *see also Cogniplex, Inc. v. Hubbard Ross, L.L.C.*, Nos. 00 C 7463, 00 C 7933, 2001 WL 436210, at *4 (N.D. Ill. Apr. 27, 2001) (unnecessary to join non-party alleged to have been co-author of copyrighted work because court did not need to determine whether the non-party approved a purported license in order to decide whether the license was valid).  And, it is hard to see how the interest of those purported owners would diverge from that of Plaintiffs.  Indeed, because they are not signatories to the Deal Memo, it is quite likely they too would ask this Court to find that the copyrights were never assigned to Defendants.  *See ABKCO Music, Inc. v. LaVere*, 217 F.3d 684, 687 (9th Cir. 2000) (district court did not abuse discretion in determining that non-party was not indispensable given that the plaintiff and the non-party shared an interest in establishing that certain copyrights

were not in the public domain). The Court therefore holds that Rule 19 would not bar Plaintiffs from seeking the limited relief that they now request, and Defendants' motion to dismiss is denied as to this claim.

### B. Statute of Limitations

Defendants' alternative argument, that the statute of limitations has run on Plaintiffs' copyright claim, likewise is unavailing. Defendants correctly point out that a plaintiff in a dispute over the ownership of a copyright must file suit within three years of the accrual of its claim. "[T]he copyright statute of limitations starts to run when the plaintiff learns, or should as a reasonable person have learned, that the defendant was violating his rights." *Gaiman v. McFarlane*, 360 F.3d 644, 653 (7th Cir. 2004) (quoting *Taylor v. Meirick*, 712 F.2d 1112, 1117 (7th Cir. 1983)). However, statutes of limitation are affirmative defenses, and as the Seventh Circuit plainly holds, "[o]rders under Rule 12(b)(6) are not appropriate responses to the invocation of defenses, for plaintiffs need not anticipate and attempt to plead around all potential defenses." *Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004). Indeed, such dismissals are "irregular," because, as Judge Easterbrook explains, the task of "resolving defenses comes after the complaint stage." *United States v. N. Trust Co.*, 372 F.3d 886, 888 (7th Cir. 2004). A motion to dismiss based on an affirmative defense may only be granted "when the plaintiff pleads itself out of court—that is, admits all the ingredients of an impenetrable defense." *Xechem*, 372 F.3d at 901.

Here, the Court concludes that Plaintiffs have not pleaded themselves out of court so as to render their claims indefensible to a statute of limitations challenge. If Defendants wish to pursue their statute of limitations defense, they may seek summary judgment on this basis at the appropriate juncture.

## II.     Count IV - Accounting

Defendants also move to dismiss Count IV, which seeks an equitable accounting "of monies due to the Plaintiffs." (Compl. ¶ 22.) Citing New York common law, Defendants argue that the claim must be dismissed because there is neither a contractual duty to account under the Deal Memo's terms nor an equitable duty to account. In response, Plaintiffs cite Illinois law and argue that they have specifically alleged that an accounting is necessary. Moreover, Plaintiffs point out that the Deal Memo (a) expressly provides for an accounting and (b) acknowledges the existence of mutual accounts of a complex nature. Because the parties fail to address which state's law applies, the Court will apply Illinois law. *Ryerson Inc. v. Federal Ins. Co.*, 676 F.3d 610, 611 (7th Cir. 2012) (Posner, J.) (Illinois law applies in diversity suits filed in district courts of that state where neither party argues choice of law).

In Illinois, a plaintiff states a claim for an accounting where it can "show the absence of an adequate remedy at law and one of the following: (1) a breach of fiduciary relationship between the parties; (2) a need for discovery; (3) fraud; or (4) the existence of mutual accounts which are of a complex nature." *Mann v. Kemper Fin. Cos., Inc.*, 618 N.E.2d 317, 327 (Ill. App. Ct. 1992) (quoting *People ex rel. Hartigan v. Candy Club*, 501 N.E.2d 188, 190 (Ill. App. Ct. 1986)). Here, although there are no allegations of a fiduciary relationship (and as set forth below, whether Plaintiffs have stated a claim for fraud is an open question), the Deal Memo does expressly require Defendants to account for royalties and reserves. Specifically, the Deal Memo states as follows:

> **9.     Accounting / Payment:**
>
> Royalty statements will be issued quarterly, 60 days after quarter end. Royalties will be paid only on sales for which Company has been paid for. A reserve for returns will be set at 25%, liquidated as follows: 50% of each reserve (4) quarter accounting periods after such reserve is established and 50% of each such reserve (8) quarterly accounting periods after such reserve is established. There will be no reserve for digital sales.

(Compl., Ex. A (Deal Memo) at 3.) The Complaint also alleges that Defendants have failed to accurately account for the royalty calculations as provided above; however, it falls short of pleading the necessary elements of a claim for an Accounting under Illinois law outlined above. As a result, Count IV is dismissed without prejudice. Plaintiffs are hereby granted leave to file an Amended Complaint within 14 days of this Order to the extent they can replead Count IV consistent with this Order.

**III.     Count V – Violations of the Tennessee Consumer Protection Act**

The Tennessee Consumer Protection Act, T.C.A. § 47-18-101 *et seq*. ("TCPA") is a "little FTC act" modeled on the Federal Trade Commission Act. The TCPA governs unfair or deceptive trade practices in Tennessee. "To state a claim under the TCPA a plaintiff must show (1) the defendant engaged in an unfair or deceptive act or practice declared unlawful by the TCPA, and (2) the defendant's conduct caused an "ascertainable loss of money or property, real, personal, or mixed, or any other article, commodity, or thing of value wherever situated[.]" *ProductiveMD, LLC v. 4UMD, LLC*, 821 F. Supp. 2d 955, 967 (M.D. Tenn. 2011) (citing Tenn. Code Ann. § 47-18-109(a)). Claims brought pursuant to the TCPA must be pleaded with particularity. *Metropolitan Cas. & Ins. Co. v. Bell*, No. 04-5965, 2005 WL 1993446, at *5 (6th Cir. Aug. 17, 2005) (citing *Harvey v. Ford Motor Co.*, 8 S.W.3d 273, 275 (Tenn. Ct. App. 1999)).

Defendants argue that Plaintiffs fail to plead their claims with particularity and wrongly attempt to convert a garden-variety breach of contract claim into a consumer fraud claim. Plaintiffs counter that they have alleged a pattern of deceptive practices by the Defendants sufficient to state a claim under both the TCPA.

The Court agrees with Defendants that the requisite degree of particularity is absent. Plaintiffs allege that Defendants engaged in deceptive practices in connection with their withholding of royalties and provided deceptive royalty statements to Plaintiffs. However, these allegations fall short of the "who, what, when, where, and how" necessary to plead a fraud claim with particularity under Fed. R. Civ. P. 9(b). *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990). And, although breach of contract and consumer fraud act claims are not necessarily mutually exclusive under Tennessee law, *see*, *e.g.*, M*orris v. Mack's Used Cars*, 824 S.W.2d 538, 540 (Tenn. 1992), Plaintiffs here fail to allege anything more than conclusory allegations of a deceptive pattern or practice.

Given Plaintiffs' failure to adequately plead their TCPA claim, the Court dismisses Count V without prejudice. Plaintiffs have leave to file an Amended Complaint within 14 days of this Order to the extent that they can plead a TCPA claim that satisfies Fed. R. Civ. P. 9(b).

**IV.     Count VI – Violations of the Illinois Consumer Fraud Act**

Like the TCPA, the Illinois Consumer Fraud Act, § 815 ILCS 505/1 *et seq*. ("ICFA") is also a "little FTC act." The ICFA was enacted to combat deceptive trade practices and consumer fraud in Illinois. In order to state an ICFA claim, a plaintiff must plead specific facts that show "(1) a deceptive act or practice by defendant; (2) defendant's intent that plaintiff rely on the deception; and (3) that the deception occurred in the course of conduct involving trade and commerce." *Connick v. Suzuki Motor Co., Ltd*., 675 N.E.2d 584, 593 (Ill. 1996). In Illinois, "a

complaint alleging a violation of consumer fraud must be pled with the same particularity and specificity as that required under common law fraud." *Id.*; *see Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 881-82 (7th Cir. 2005).

Defendants raise the same criticisms of the ICFA claim as they do regarding the TCPA claim. To wit, Defendants argue that Plaintiffs fail to plead their claim with particularity and their ICFA claim is merely a simple breach of contract claim. Again, Plaintiffs counter that they have pleaded a pattern of deceptive practices sufficient to state a claim under the ICFA.

Here too, the Court agrees with Defendants. Plaintiffs' IFCA allegations fall short of the "who, what, when, where, and how" required by Fed. R. Civ. P. 9(b). *DiLeo*, 901 F.2d at 627. As in Tennessee, Illinois law does not preclude a plaintiff from simultaneously asserting ICFA and breach of contract claims, *see Gaudie v. Countrywide Home Loans*, Inc., 683 F. Supp. 2d 750, 758-59 (N.D. Ill. 2010), but mere "[c]onclusory allegation[s]" are "insufficient to transform what is otherwise a garden-variety breach of contract claim into a cause of action under the [ICFA]." *Lake Cnty. Grading Co. of Libertyville, Inc. v. Advance Mech. Contractors, Inc.*, 654 N.E.2d 1109, 1116 (Ill. App. Ct. 1995). Again, Plaintiffs fail to adequately differentiate their ICFA claim from their breach of contract claim and to plead their ICFA claim with particularity.

As such, the Court dismisses Count VI without prejudice. However, Plaintiffs may amend Count VI within 14 days of this Order to the extent that they believe that they can replead their ICFA claim consistent with this Order.

**V.    Count VII – Violations of the Lanham Act and the Illinois Right to Publicity Act**

Finally, Plaintiffs allege that Defendants have misused Plaintiff Jeremy McKinnon's image and likeness for commercial purposes in connection with merchandise sales. (Compl. ¶ 30.) Plaintiffs seek injunctive relief and monetary damages pursuant to the Illinois Right of

10

Publicity Act ("IRPA"), 765 ILCS 1075/1 *et seq.* and Section 43 of the Lanham Act, 15 U.S.C. § 1125(a). Defendants retort that Plaintiffs' IRPA claim must be dismissed because it fails to set forth which of Mr. McKinnon's attributes were misappropriated. Defendants further argue that the Lanham Act claim is wanting because the Complaint contains "no factual allegations that Mr. McKinnon has any protectable interest in any cartoon likeness, what that protectable interest is, or how Victory's use of the generic Character has caused, or is likely to cause, confusion among consumers with respect to Mr. McKinnon's purported endorsement." (Defs.' Mem. Supp. Mot. Dismiss 28.)

Defendants' arguments are unpersuasive. A plaintiff may state an IRPA claim by alleging (1) an appropriation of one's name or likeness; (2) without written consent; and (3) for another's commercial benefit. *See Blair v. Nevada Landing P'ship*, 859 N.E.2d 1188, 1191-92 (Ill. App. Ct. 2006); 765 ILCS 1075/60. Plaintiffs allege precisely this. It is unclear what else would possibly be required at this stage of the litigation. *See*, *e.g.*, *Maremont v. Susan Fredman Design Group, Ltd.*, 772 F. Supp. 2d 967, 971 (N.D. Ill. 2011) (claim survived motion to dismiss where plaintiff alleged her name and likeness were used for commercial purposes without her permission). Moreover, Defendants' sole authority for their argument is *Hart v. Elec. Arts, LLC*, 740 F. Supp. 2d 658, 664-65 (D.N.J. 2010). But *Hart* applies the New Jersey Right to Publicity Act, not the IRPA, and therefore is unavailing. Because Defendants provide no binding legal authority to support the result they seek, Plaintiffs' IRPA claim withstands Defendants' challenge.

Plaintiffs' Lanham Act claim also survives. It is commonly understood that the elements of a false endorsement claim under state and federal law are much the same. *ETW Corp. v. Jireh Pub., Inc.*, 332 F.3d 915, 924 (6th Cir. 2003) (citing Bruce P. Keller, The Right Of Publicity:

11

Past, Present, and Future, 1207 PLI Corp. Law and Prac. Handbook, 159, 170 (Oct. 2000)). For the same reasons that Plaintiffs' IRPA claim survives Defendants' motion to dismiss, Plaintiffs' Lanham Act claim likewise survives.

Moreover, Defendants' assertion that Plaintiffs must plead "factual allegations" as to their protectable interest or specify how Defendants' actions cause a likelihood of confusion does not aid their cause. Defendants' sole citation in support of this proposition, *Segal v. Geisha NYC LLC*, 517 F.3d 501 (7th Cir. 2008), is wholly distinguishable. There, the Seventh Circuit dismissed a trademark infringement claim not because it was inadequately pleaded, but because the plaintiff could not assert a plausible trademark infringement claim under *any* set of facts where it was undisputed that the *defendants* owned the trademark at issue. *Id.* at 505. *Segal* thus does not concern a false endorsement claim and involves a different set of facts than are present here. Therefore, Defendants' motion to dismiss is denied as to Count VII.

## Conclusion

For the reasons set forth herein, Defendants' Motion to Dismiss Plaintiffs' Amended Complaint [109] is granted in part and denied in part. Counts IV, V and VI are dismissed without prejudice, and Plaintiffs are granted fourteen (14) days to file an amended pleading in conformance with this Order. The remainder of the motion is denied.

**SO ORDERED**       **ENTER:**

_____
**JOHN Z. LEE**
**U.S. District Judge**

August 30, 2013.